**Law Offices of Carlos R. Barrios & Assoc. a P.C.**
Carlos R. Barrios 249654
510 West 6th Street Suite 1210
Los Angeles, CA 90014
Tel.: (213) 599-8414
Fax.: (888) 255-9710

Attorneys for Petitioner,
MARCOS ALVARO FRANCISCO

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCOS ALVARO FRANCISCO,<br><br>Petitioner,<br><br>VS.<br><br>MARKWAYNE MULLIN,<br>Secretary, United States Department of Homeland Security; RODENY S. SCOTT, Commissioner, United States Customs and Border Protection; JAIME RIOS in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; EDDY WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement;<br>WARDEN OF DESERT VIEW FACILITY, in his/her capacity as warden of the DESERT VIEW FACILITY, and DOES 1 to 10, INCLUSIVE.<br><br>Respondents. | Case No.<br><br>Agency No. 222-570-927<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

## INTRODUCTION

1. Petitioner respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 because Respondents are presently depriving Petitioner of physical liberty in violation of the Constitution and laws of the United States. This case concerns not merely whether Petitioner falls within the discretionary detention framework of 8 U.S.C. § 1226(a), but whether Respondents lawfully exercised that authority when they abruptly arrested and incarcerated Petitioner who had lived openly in the United States for approximately 17 years.

2. Petitioner is a native and citizen of Guatemala, born September 26, 1986. He first entered the United States in 2009, was detained by ICE, signed a voluntary departure, and was returned to Mexico rather than Guatemala. He last reentered the United States without inspection in 2009. He denies any criminal record. On October 30, 2026, in the morning, ICE officers arrested him without a warrant outside his apartment complex after he had entered his work truck. He is married, his spouse has no immigration status. He is the father of a seven-year-old United States citizen daughter and has a seventeen-year-old United States citizen stepson. He has no parents or siblings with immigration status. He has no criminal history.

3. The legality of that action raises two distinct and independently sufficient grounds for habeas relief.

4. First, because Petitioner was apprehended in the interior of the United States, Petitioner's detention, if otherwise lawful, is governed by 8 U.S.C. § 1226 rather than § 1225(b)(2)(A). See *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026). Petitioner does not dispute that statutory classification. But *Rodriguez Vazquez* does not answer whether Respondents complied with the statutory prerequisites Congress imposed upon an arrest made pursuant to § 1226(a).

5. Section 1226(a) expressly provides that, "[o]n a warrant issued by the Attorney General," a noncitizen may be arrested and detained pending a decision on removal. Congress separately authorized warrantless immigration arrests only under specified circumstances. Relevant here, 8 U.S.C. § 1357(a)(2) permits a warrantless interior arrest where an immigration officer has reason to believe both that the noncitizen is unlawfully present and that the individual is "likely to escape before a warrant can be obtained."

6. Second, even assuming Respondents possessed statutory authority to arrest Petitioner under § 1226(a), the Fifth Amendment independently constrains the manner in which the Executive may deprive a person of physical liberty. "Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). That protection extends to noncitizens physically present within the United States regardless of immigration status. Id. at 693.

7. Petitioner's liberty interest is especially substantial. For approximately 17 years, Petitioner has resided in the United States. He has family ties through his spouse, his seven-year-old United States citizen daughter, and his seventeen-year-old United States citizen stepson, and denies any criminal record.

8. Recent District decisions recognize that prolonged freedom within the community materially informs the constitutional analysis. Courts evaluating procedural due process claims first determine whether a protected liberty interest exists and then determine what process must precede its deprivation. The Supreme Court's decisions in *Morrissey v. Brewer*, 408 U.S. 471 (1972), *Young v. Harper*, 520 U.S. 143 (1997), and the flexible balancing framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), reflect the broader constitutional principle that physical liberty may not be withdrawn arbitrarily merely because the Government possesses underlying statutory authority to impose custody.

9. Petitioner recognizes that this case differs from those involving a noncitizen whom DHS previously arrested and affirmatively released under § 1226. Petitioner's liberty interest does not depend exclusively upon a prior administrative order of release. It arises first from the Fifth Amendment's core protection against physical restraint and is reinforced by the extraordinary duration and character of Petitioner's settled liberty: Petitioner is a native and citizen of Guatemala, born September 26, 1986. He first entered the United States in 2009, was detained by ICE, signed a voluntary departure, and was returned to Mexico rather than Guatemala. He reentered the United States without inspection in 2009. He denies any criminal record. On October 30, 2026, in the morning, ICE officers arrested him without a warrant outside his apartment complex after he had entered his work truck. He is married; his spouse has no immigration status. He is the father of a seven-year-old United States citizen daughter and has a seventeen-year-old United States citizen stepson. He has no parents or siblings with immigration status.

10. Respondents provided no constitutionally adequate pre-deprivation process before extinguishing that liberty. Petitioner received no advance notice, no hearing before a neutral decisionmaker;no opportunity to present evidence concerning danger, flight risk, or alternatives to detention; and no

individualized determination that physical confinement was necessary before Petitioner was removed from the community and imprisoned.

11. An ordinary post-deprivation bond hearing does not fully remedy either injury. As to Petitioner's statutory claim an Immigration Judge considering bond does not adjudicate whether ICE complied with §§ 1226(a) and 1357(a)(2) when it made the underlying arrest. The Eastern District has expressly recognized that a post-hoc hearing concerning danger and flight risk does not cure an allegedly unlawful warrantless arrest.

12. Nor does a conventional § 1226(a) hearing necessarily remedy Petitioner's pre-deprivation due process claim. *Rodriguez Vazquez* determines the statutory regime applicable to detention; it does not hold that the Executive may incarcerate a person first and determine only afterward whether the deprivation was necessary. Nor does it hold that the Fifth Amendment is satisfied merely because a detainee may later ask an Immigration Judge to restore the liberty the Government has already taken.

13. That distinction is especially consequential because an ordinary § 1226(a) proceeding may place upon Petitioner the burden of demonstrating that Petitioner merits release. The constitutional question presented here runs in the opposite direction: what individualized justification permitted Respondents to take Petitioner's liberty in the first instance? Requiring

Petitioner, only after incarceration, to prove that Petitioner deserves freedom would not answer whether Respondents complied with the Constitution before imposing the deprivation.

14. This Petition therefore does not ask the Court to disregard Rodriguez Vazquez, interfere with Petitioner's removal proceedings, or adjudicate the ultimate merits of Petitioner's immigration process. It asks the Court to perform the traditional function of habeas corpus: determine whether the Executive lawfully deprived Petitioner of physical liberty and whether Petitioner's continued detention may constitutionally persist.

15. Because Petitioner's arrest and detention were allegedly initiated without the statutory warrant required by § 1226(a) and without facts satisfying an applicable warrantless-arrest exception, and because Respondents independently extinguished Petitioner's longstanding liberty without constitutionally adequate pre-deprivation process, Petitioner respectfully requests that this Court issue the writ and order Petitioner's immediate release.

16. Alternatively, if the Court declines to order immediate release, Petitioner requests a prompt constitutionally adequate custody hearing at which Respondents bear the burden of establishing through clear and convincing individualized evidence that detention is presently necessary; any asserted

basis for flight risk or danger is evaluated against Petitioner's actual history and circumstances, reasonable less restrictive alternatives are meaningfully considered, and Petitioner's ability to pay is considered before any monetary condition capable of resulting in continued detention is imposed.

## JURISDICTION AND VENUE

17. This action arises under the Constitution and laws of the United States and is brought pursuant to the federal habeas corpus statute, 28 U.S.C. § 2241.

18. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner is presently "in custody in violation of the Constitution or laws or treaties of the United States." Petitioner is physically confined by Respondents at the DESERT VIEW FACILITY as a direct consequence of the arrest and detention challenged herein.

19. This Court also possesses federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because Petitioner alleges that Respondents' arrest and continued detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2), as well as the Due Process Clause of the Fifth Amendment to the United States Constitution.

20. Habeas corpus is the traditional and appropriate vehicle for challenging the legality of executive detention and obtaining release from unlawful physical custody. Petitioner does not seek review of any final order of removal, challenge the merits of any removal determination, or ask this Court to

adjudicate the underline immigration matter. Petitioner challenges only the legality of Petitioner's arrest and present physical confinement.

21. Petitioner's claims therefore fall within the traditional core of habeas jurisdiction. Petitioner alleges that Respondents lacked statutory authority to effect the warrantless arrest that produced Petitioner's present detention and, independently, that Respondents deprived Petitioner of physical liberty without the procedures required by the Fifth Amendment.

22. The jurisdictional limitations contained in 8 U.S.C. § 1252 do not preclude review of Petitioner's claims because the Petition does not seek judicial review of a discretionary immigration determination or a final order of removal. Rather, Petitioner challenges the independent statutory and constitutional authority for Petitioner's present detention.

23. Section 1252(g) likewise does not bar jurisdiction. Petitioner's challenge does not arise from the Attorney General's discretionary decision or action to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Instead, Petitioner challenges the legality of the warrantless seizure and physical detention that preceded and exists independently of the adjudication of Petitioner's removal proceedings.

24. Nor does the availability of a custody redetermination hearing under 8 U.S.C. § 1226(a) eliminate this Court's habeas jurisdiction. Petitioner's

principal claims concern injuries that an ordinary bond proceeding is not empowered to adjudicate: whether DHS complied with the statutory limitations governing the underlying arrest and whether the Government provided constitutionally adequate process before depriving Petitioner of Petitioner’s longstanding physical liberty.

25. Specifically, Petitioner alleges that DHS arrested him without the warrant contemplated by § 1226(a). Petitioner was not shown or served with a warrant at the time of Petitioner’s arrest, and, based upon the information presently available to Petitioner and counsel, no administrative arrest warrant existed when DHS took Petitioner into custody.

26. Whether DHS obtained a warrant is a fact peculiarly and exclusively within Respondents' possession. The statutory scheme does not require Petitioner to prove the nonexistence of a Government record inaccessible to him. Once Respondents seek to justify Petitioner's warrantless seizure and continued detention, Respondents possess the records and information necessary to establish whether a warrant existed and, if none existed, the particularized factual basis upon which the arresting officers purported to invoke an exception to the statutory warrant requirement.

27. That allocation is especially appropriate here because § 1357(a)(2) does not authorize warrantless immigration arrests merely upon a belief that an

individual is unlawfully present. Congress imposed an additional limitation: the officer must have reason to believe that the individual "is likely to escape before a warrant can be obtained." Whether the arresting officers possessed such information at the time of Petitioner's seizure, and what information supposedly supported that belief, rests principally within Respondents' knowledge and records.

28. An Immigration Judge conducting an ordinary § 1226(a) bond hearing would determine whether Petitioner's prospective release is appropriate under the applicable custody framework. Such a hearing does not retrospectively adjudicate whether DHS possessed a warrant when it arrested Petitioner or whether the arresting officers satisfied § 1357(a)(2)'s statutory prerequisites for dispensing with one. Accordingly, the availability of a bond proceeding does not furnish an adequate administrative remedy for Petitioner's threshold claim that the detention itself was unlawfully initiated.

29. The District Courts recently recognized precisely this distinction in addressing a materially similar challenge to warrantless immigration detention. There, the court rejected the contention that a § 1226(a) bond hearing supplied an adequate administrative remedy because a later determination concerning danger or flight risk could not cure the antecedent

injury arising from an arrest and detention allegedly undertaken without the statutorily required warrant.

30. Petitioner's separate Fifth Amendment claim likewise falls within this Court's habeas jurisdiction. The Constitution protects freedom from physical restraint as a core liberty interest, and Petitioner alleges that Respondents extinguished that liberty without notice, without a pre-deprivation hearing, without an individualized determination of danger or flight risk, and without considering whether any less restrictive measure could adequately protect the Government's legitimate interests.

31. Because Petitioner is presently incarcerated as a consequence of the statutory and constitutional violations alleged herein, success on Petitioner’s claims would necessarily affect the fact of Petitioner’s physical confinement. Immediate release is therefore an available and appropriate habeas remedy.

32. Venue is proper in the United States District Court because Petitioner is presently detained at the DESERT VIEW FACILITY, located within this District, and Petitioner’s immediate custodian is subject to this Court's territorial jurisdiction.

33. This Court therefore possesses jurisdiction under 28 U.S.C. §§ 2241 and 1331 to determine whether Petitioner's present detention complies with

federal law and the Constitution and, if it does not, to order Petitioner's release.

## PARTIES

34. Petitioner MARCOS ALVARO FRANCISCO, A# 222-570-927 is presently confined by U.S. Immigration and Customs Enforcement ("ICE") at the DESERT VIEW FACILITY.

35. Petitioner has resided in the United States since his 2009 reentry, following an ICE detention and voluntary departure in 2009. Before the October 30, 2026 arrest, he lived in the community.

36. Respondent MARKWAYNE MULLIN is the Secretary of the United States Department of Homeland Security ("DHS"). In that capacity, Respondent Mullin exercises ultimate authority over DHS and its component agencies, including ICE, and is responsible for the administration and enforcement of the Immigration and Nationality Act. He is sued in his official capacity.

37. Respondent JAIME RIOS is the Acting Field Office Director for the Field Office of ICE. In that capacity, Respondent RIOS exercises supervisory authority over ICE Enforcement and Removal Operations personnel responsible for the detention, transfer, and release of individuals detained within the relevant area of responsibility, including individuals confined at the DESERT VIEW FACILITY. He is sued in his official capacity.

38. Respondent EDDY WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement. In that capacity, Respondent WANG is responsible for ICE policies, practices, and operations concerning the apprehension, detention, transfer, supervision, and release of noncitizens, including Petitioner. He is sued in his official capacity.

39. Respondent is the Warden of the DESERT VIEW FACILITY, where Petitioner is presently confined. As Petitioner's immediate physical custodian, Respondent exercises day-to-day authority over Petitioner's physical detention and is capable of effectuating an order directing Petitioner’s release. He is sued in his official capacity.

40. Respondents DOES 1 through 10 are officers, employees, agents, supervisors, or other officials of the United States whose identities are presently unknown and who participated in, authorized, supervised, implemented, or presently maintain the arrest and detention challenged herein. Petitioner will seek leave to identify these Respondents if and when their identities become known.

## FACTUAL AND LEGAL BACKGROUND

A. *Petitioner Has Lived Openly and Continuously in the United States for Years*

41. Petitioner MARCOS ALVARO FRANCISCO is a native and citizen of Guatemala, born September 26, 1986. He first entered the United States in 2009, was detained by ICE, signed voluntary departure and was returned to Mexico, and last reentered without inspection in 2009, and has remained since.

B. *Petitioner Has Longstanding Community Ties*

42. Petitioner has resided in the United States since his 2009 reentry. He is married to a spouse without immigration status and has a seven-year-old United States citizen daughter and a seventeen-year-old United States citizen stepson. He denies any criminal record and has no parents or siblings with immigration status.

C. *DHS Deprived Petitioner of Physical Liberty Without Any Pre-Deprivation Determination That Detention Was Necessary*

43. Petitioner's arrest did not merely alter the conditions governing his presence in the United States. It transformed physical liberty into incarceration.

44. Before his arrest by ICE agents, Petitioner had lived in the United States since his 2009 reentry. Petitioner is a native and citizen of Guatemala, born September 26, 1986. He first entered the United States in 2009, was detained

by ICE, signed a voluntary departure, and was returned to Mexico rather than Guatemala. He reentered the United States without inspection in 2009. He denies any criminal record. On October 30, 2026, in the morning, ICE officers arrested him without a warrant outside his apartment complex after he had entered his work truck. He is married; his spouse has no immigration status. He is the father of a seven-year-old United States citizen daughter and has a seventeen-year-old United States citizen stepson. He has no parents or siblings with immigration status.

45. Before taking that liberty away, Respondents provided Petitioner no notice that DHS intended to incarcerate him and no meaningful opportunity to contest the necessity of detention.

46. No neutral decisionmaker determined before Petitioner's arrest that Petitioner posed a danger to the community.

47. No neutral decisionmaker determined before Petitioner's arrest that he presented a flight risk.

48. No neutral decisionmaker considered whether reporting requirements, electronic monitoring, an order of supervision, or any other less restrictive alternative could adequately protect whatever governmental interest Respondents believed required restraint.

49. Nevertheless, Respondents imposed the most severe form of civil restraint, physical incarceration, without first providing any individualized process concerning whether that deprivation was necessary.

50. Petitioner is now confined at the DESERT VIEW FACILITY, separated from family, home, employment, and community while his immigration proceedings remain pending.

51. The Supreme Court has repeatedly recognized that freedom from governmental custody and physical restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

52. Courts evaluating procedural due process claims therefore ask both whether the individual possesses a protected liberty interest and what procedures the Constitution requires before the Government may deprive the individual of that interest. See *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The District Courts sample similarly develops the constitutional inquiry by separating the existence of the protected liberty interest from the procedures constitutionally required before its deprivation.

53. Petitioner's claim does not depend upon the proposition that years of residence independently immunized him from immigration detention. Rather,

those years define the magnitude and settled character of the physical liberty Respondents extinguished, and they materially inform the procedures required before the Government could impose incarceration.

54. The Government's authority to administer the immigration laws does not eliminate the Fifth Amendment's independent procedural protections. Statutory eligibility for detention and constitutional adequacy of the procedures used to impose that detention remain distinct questions.

### *D. A Post-Deprivation § 1226(a) Bond Hearing Does Not Resolve the Claims Presented in This Petition*

55. Petitioner recognizes that *Rodriguez Vazquez* holds that individuals in Petitioner's statutory position are governed by § 1226 and may seek custody redetermination under that framework. Petitioner does not ask this Court to disregard that decision.

56. But the availability of an ordinary § 1226(a) bond hearing does not resolve the injuries alleged here.

57. First, an Immigration Judge conducting a bond hearing does not determine whether ICE possessed the warrant contemplated by § 1226(a) when it arrested Petitioner or whether the arresting officers satisfied § 1357(a)(2)'s statutory requirements for dispensing with one.

58. The District Courts have recently recognized precisely that distinction in the warrantless-arrest context. A subsequent bond proceeding concerning danger

and flight risk does not cure the antecedent injury alleged from arrest and detention without the statutorily required warrant.

59. Second, a post-deprivation bond hearing does not answer Petitioner's independent procedural due process claim. That claim concerns what process was constitutionally required before Respondents converted Petitioner's longstanding physical liberty into incarceration, not merely what procedures may be available afterward to seek restoration of that liberty.

60. The distinction is consequential. If an ordinary bond proceeding places the burden upon Petitioner to establish that Petitioner is not dangerous or a flight risk, the Government would first incarcerate Petitioner without any individualized pre-deprivation determination of necessity and then require Petitioner to establish why Petitioner’s liberty should be restored.

61. That procedure does not answer the constitutional question presented here: what individualized justification permitted the Government to deprive this particular Petitioner of physical liberty in the first instance?

62. Accordingly, Petitioner's claims remain cognizable notwithstanding the availability of a § 1226(a) custody redetermination proceeding. The principal remedy sought is immediate release from detention unlawfully initiated and imposed without constitutionally adequate pre-deprivation process.

63. Only in the alternative, should the Court decline to order immediate release, Petitioner requests a prompt custody hearing containing safeguards sufficient to address the constitutional interests at stake, including placement of the burden upon Respondents to demonstrate through clear and convincing individualized evidence that continued detention is necessary and that reasonable less restrictive alternatives cannot adequately protect the Government's legitimate interests.

## REQUIREMENTS OF 28 U.S.C. § 2243

64. Pursuant to 28 U.S.C. § 2243, this Court must grant the writ or issue an Order to Show Cause unless it appears from the petition that Petitioner is not entitled to relief.

65. Petitioner alleges ongoing detention in violation of the Constitution and laws of the United States, issuance of an Order to Show Cause is appropriate.

66. Petitioner respectfully requests expedited consideration because this action concerns a continuing deprivation of physical liberty.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES IS EXCUSED

67. Although federal courts may require immigration detainees to pursue available administrative remedies before seeking habeas relief under 28 U.S.C. § 2241, exhaustion in this context is prudential rather than

jurisdictional. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011); *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007).

68. In determining whether prudential exhaustion should be required, the Ninth Circuit considers whether: (1) "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision"; (2) excusing exhaustion would "encourage the deliberate bypass of the administrative scheme"; and (3) "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488 F.3d at 815 (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

69. Each factor weighs against requiring exhaustion here. Moreover, even where prudential considerations otherwise favor exhaustion, exhaustion may be excused where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

70. Petitioner acknowledges that *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026), places Petitioner within the detention framework of 8 U.S.C. § 1226 rather than § 1225(b)(2)(A), and that § 1226(a) generally permits a detainee to seek custody redetermination before

an Immigration Judge. But the existence of that administrative remedy does not resolve the claims presented here.

71. Petitioner challenges the legality of Respondents' antecedent decision to seize and incarcerate Petitioner without a warrant and, independently, the constitutionality of Respondents' deprivation of Petitioner's longstanding physical liberty without adequate pre-deprivation process. An ordinary § 1226(a) bond proceeding cannot adjudicate or remedy either claim.

### A. *The First Puga Factor Weighs Against Exhaustion Because Agency Expertise Is Unnecessary to Resolve Petitioner's Claims*

72. The first Puga factor asks whether agency expertise is necessary to develop a proper record and reach a proper decision. Puga, 488 F.3d at 815. It is not.

73. Petitioner's principal claims present questions of statutory interpretation and constitutional law appropriate for judicial resolution. The first asks whether DHS possessed statutory authority to arrest Petitioner without a warrant under 8 U.S.C. §§ 1226(a) and 1357(a)(2). The second asks whether the Government could deprive Petitioner of physical liberty without constitutionally adequate pre-deprivation process.

74. Neither question requires the specialized expertise of an Immigration Judge or the Board of Immigration Appeals. Whether § 1357(a)(2)'s statutory requirements were satisfied depends upon the circumstances existing when DHS arrested Petitioner and, specifically, whether the arresting officers had

reason to believe that Petitioner was "likely to escape before a warrant [could] be obtained." That is a question concerning the statutory authority for the Executive's seizure, not the discretionary amount or conditions of an immigration bond.

75. Nor is administrative consideration necessary to create the material factual record. Respondents themselves possess the relevant evidence: any administrative warrant, arrest reports, officer declarations, internal records, and contemporaneous evidence upon which DHS relies to establish authority for the warrantless arrest. No BIA appeal is necessary to create those documents or determine whether a warrant existed.

76. Petitioner's due process claim likewise presents a judicial question. An Immigration Judge cannot definitively determine the constitutional adequacy of DHS's pre-arrest procedures or declare executive detention unconstitutional under the Fifth Amendment. The administrative custody process is therefore not uniquely equipped to resolve the questions presented by this Petition.

77. This case consequently differs materially from Puga itself. There, the petitioner's ineffective-assistance claims concerned attorney conduct during immigration proceedings, and the Ninth Circuit concluded that agency consideration was useful because the BIA could develop the relevant record

and correct administratively remediable procedural errors. *Puga*, 488 F.3d at 815–16. Here, by contrast, Petitioner's claims concern DHS's statutory authority to effect a warrantless arrest and the constitutional sufficiency of the process preceding physical detention—matters an Immigration Judge cannot retroactively correct.

78. The first *Puga* factor therefore weighs strongly against exhaustion.

B. *The Second Puga Factor Weighs Against Exhaustion Because Petitioner Is Not Deliberately Bypassing the Administrative Scheme*

79. The second Puga factor considers whether excusing exhaustion would encourage a deliberate bypass of the administrative scheme. *Puga,* 488 F.3d at 815. It would not.

80. Petitioner is not attempting to substitute this Court for the Immigration Judge on a matter committed to EOIR's discretionary custody authority. Petitioner does not ask this Court to determine the appropriate amount of bond, adjudicate removability, or decide Petitioner's underline immigration relief.

81. Nor did Petitioner manufacture the present controversy by avoiding the administrative process. The opposite is true.

82. Petitioner's resort to habeas therefore does not constitute forum shopping or an attempt to evade ordinary immigration adjudication. It invokes the traditional judicial remedy for a fundamentally different injury: allegedly unlawful executive custody.

83. Moreover, the administrative scheme Petitioner supposedly would be "bypassing" does not provide a mechanism for an Immigration Judge to adjudicate whether DHS's antecedent warrantless arrest violated §§ 1226(a) and 1357(a)(2), order release as a remedy for that statutory violation, or determine whether the absence of pre-deprivation process violated the Fifth Amendment.

84. Requiring a litigant to pursue a proceeding that cannot decide the claims Petitioner actually presents does not further respect for the administrative scheme. It merely postpones judicial consideration of claims outside that scheme's remedial competence.

85. The second *Puga* factor therefore weighs against exhaustion.

### C. *The Third Puga Factor Weighs Against Exhaustion Because Administrative Review Cannot Correct the Alleged Violations or Eliminate the Need for Judicial Review*

86. The third *Puga* factor asks whether administrative review is likely to allow the agency to correct its own mistakes and thereby preclude the need for judicial intervention. *Puga*, 488 F.3d at 815.

87. That consideration weighs particularly strongly against exhaustion here because the injuries alleged have already occurred and cannot be retroactively corrected through a bond proceeding.

88. If Respondents arrested Petitioner without the warrant contemplated by § 1226(a) and without satisfying § 1357(a)(2), an Immigration Judge cannot retroactively issue the missing warrant or create facts establishing that, at the time of arrest, DHS possessed reason to believe Petitioner would escape before a warrant could be obtained.

89. A bond hearing addresses a different question: whether Petitioner should remain detained based upon considerations such as present danger or flight risk. It does not determine whether DHS lawfully acquired physical custody over Petitioner in the first instance.

90. The same is true of Petitioner's due process claim. A post-deprivation hearing cannot become the pre-deprivation process Petitioner alleges was constitutionally required merely because it occurs later. The administrative process may determine whether Petitioner should now be released, but it cannot undo the process through which his liberty was originally taken. The existing exhaustion section correctly recognizes that distinction.

91. Administrative review therefore cannot eliminate the need for Article III adjudication of either principal claim. Whether Petitioner obtains bond would not answer whether Petitioner's warrantless arrest was statutorily authorized or whether the procedures used to deprive Petitioner of liberty satisfied the Fifth Amendment.

92. Indeed, requiring exhaustion could create the anomalous result of permitting the Government to avoid judicial review of an allegedly unlawful arrest merely because it subsequently afforded the detainee an opportunity to request release. That would transform a prospective custody determination into a retroactive cure for an antecedent statutory and constitutional injury.

93. The agency cannot correct the violations alleged or provide the principal relief sought, the third Puga factor also weighs against exhaustion.

D. *Independently, the Laing Exceptions Warrant Excusing Exhaustion*

94. Even if the Court concludes that any Puga consideration favors administrative exhaustion, exhaustion should independently be excused under Laing. A court may waive prudential exhaustion where administrative remedies are inadequate or inefficacious, exhaustion would be futile, irreparable injury would result, or the administrative proceedings would be void. *Laing*, 370 F.3d at 1000. Courts continue to apply these exceptions in conjunction with the *Puga* analysis in § 2241 immigration detention cases.

95. First, the available administrative remedy is inadequate because a § 1226(a) bond hearing cannot adjudicate the lawfulness of Petitioner's warrantless arrest or provide the pre-deprivation process allegedly denied.

96. Second, exhaustion would be futile as to the claims actually presented. An Immigration Judge lacks authority to retroactively validate an arrest that

violated §§ 1226(a) and 1357(a)(2), adjudicate Petitioner's constitutional challenge to DHS's pre-deprivation procedures, or issue habeas relief for unlawful executive custody.

97. Third, requiring exhaustion would inflict continuing irreparable injury because the injury challenged is physical detention itself. Each additional day Petitioner remains incarcerated constitutes a deprivation of liberty that cannot later be restored. As the Supreme Court has recognized, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

98. The harm is concrete. Petitioner's continued detention separates Petitioner from family, home, employment, and community. The existing draft properly recognizes that a later favorable administrative determination cannot restore the period of physical freedom already lost.

99. Finally, requiring exhaustion would be especially incongruous where Petitioner's central contention is that Respondents lacked lawful authority to initiate the detention from which the administrative remedy supposedly offers discretionary release. Habeas review exists to determine whether the Executive may lawfully hold the petitioner, not merely whether the Executive might later elect to release her.

E. *Rodriguez Vazquez Does Not Alter the Puga Analysis*

100. *Rodriguez Vazquez* does not require a different result. Petitioner accepts its holding that § 1226 governs Petitioner's detention. But the identification of § 1226 as the governing detention statute does not answer whether prudential exhaustion is required for claims challenging the legality of the antecedent arrest and the constitutional process by which detention was imposed.

101. To the contrary, Petitioner's acceptance that § 1226 governs makes the statutory question more concrete: Respondents must demonstrate that their exercise of authority complied with the statutory regime upon which they rely, including §§ 1226(a) and 1357(a)(2).

102. Nor does the availability of a § 1226(a) custody proceeding establish that the proceeding is an adequate administrative remedy for purposes of Puga. The relevant inquiry is not whether some administrative process exists, but whether agency expertise is necessary, whether Petitioner is improperly bypassing a competent administrative forum, and whether administrative review can actually correct the violations alleged and eliminate the need for judicial review.

103. Here, none of those considerations supports exhaustion. The claims are principally statutory and constitutional; Petitioner is not attempting to

circumvent administrative adjudication of removability or discretionary bond; and an Immigration Judge cannot retroactively cure an unlawful warrantless arrest or supply pre-deprivation process after Petitioner's liberty has already been taken.

104. Accordingly, all three *Puga* factors weigh against requiring prudential exhaustion. Independently, the inadequacy of the administrative remedy, futility of further administrative review as to the claims presented, and continuing irreparable deprivation of physical liberty satisfy the recognized grounds for excusing exhaustion under Laing.

105. The Court should therefore proceed directly to the merits of Petitioner's statutory and constitutional claims.

## THE WRIT OF HABEAS CORPUS PROTECTS PETITIONER'S FUNDAMENTAL LIBERTY INTEREST

106. This case concerns one of the oldest and most fundamental protections recognized by Anglo-American law: the right to be free from arbitrary executive restraint of physical liberty.

107. The writ of habeas corpus has historically served as the principal judicial mechanism through which courts require the Executive to demonstrate lawful authority for physical confinement. Its central function is not merely to regulate the procedures surrounding detention, but to test

whether the Government possesses lawful authority to restrain an individual's liberty at all. See *Boumediene v. Bush*, 553 U.S. 723, 739, 745 (2008); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

108. The Suspension Clause preserves that safeguard because the Framers understood that executive detention requires meaningful judicial review. U.S. Const. art. I, § 9, cl. 2. At its historic core, the writ provides a judicial forum in which a person held by the Executive may require the Government to justify the legal basis for continued physical custody. See *Boumediene*, 553 U.S. at 739; *St. Cyr,* 533 U.S. at 301.

109. Petitioner's claims fall squarely within that traditional function. Petitioner does not ask this Court to determine whether he is removable, adjudicate Petitioner’s potential immigration relief, or interfere with the Immigration Court's adjudication of Petitioner’s removal proceedings. Petitioner asks the Court to determine whether Respondents lawfully seized Petitioner without a warrant and whether the Government may continue physically confining Petitioner after depriving Petitioner of approximately years of settled liberty without constitutionally adequate pre-deprivation process.

110. Freedom from physical restraint occupies a unique position within the constitutional order. The Supreme Court has repeatedly recognized that

"[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); see also *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

111. That constitutional protection extends to noncitizens physically present within the *United States*. *Zadvydas*, 533 U.S. at 693. Although Congress possesses broad authority to regulate immigration and may authorize civil detention in appropriate circumstances, immigration authority does not displace the Fifth Amendment. Executive detention remains constrained by the fundamental requirement that the Government may not deprive a person of liberty without due process of law.

112. Immigration detention is civil, not punitive. See *Zadvydas,* 533 U.S. at 690. Its constitutional legitimacy therefore depends upon its relationship to legitimate regulatory objectives and upon procedures adequate to guard against erroneous or arbitrary deprivation of physical liberty.

113. Those principles assume particular significance in Petitioner's case because the liberty Respondents extinguished was neither theoretical nor momentary. Before detention Petitioner had lived free from immigration custody for years.

114. During those years, Petitioner has committed himself to his community, has been employed, and has supported his family.

115. Petitioner's physical liberty was therefore the actual and settled condition of Petitioner’s life for before Respondents intervened.

116. The significance of that liberty does not depend upon a claim that Petitioner's lengthy residence created immunity from immigration enforcement. It did not. Nor does Petitioner contend that the Government's prior decision not to arrest Petitioner permanently deprived DHS of statutory authority Congress otherwise lawfully conferred.

117. The constitutional point is narrower and more fundamental. When the Government elects to transform a person's longstanding physical freedom into incarceration, the Fifth Amendment has something to say about the legality of that deprivation and the procedures through which it occurs.

118. Recent decisions addressing immigration detention have recognized this distinction between the existence of statutory detention authority and the constitutional requirements governing its exercise. The question whether Congress has authorized detention does not necessarily resolve the separate question whether the procedures employed to impose that detention satisfy due process.

119. That distinction is especially important following *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026). Petitioner accepts that, under *Rodriguez Vazquez*, a noncitizen present without admission who is apprehended in the interior is governed by the detention framework of 8 U.S.C. § 1226 rather than § 1225(b)(2)(A).

120. But identifying the governing statutory framework does not end the constitutional inquiry. *Rodriguez Vazquez* does not hold that every exercise of § 1226 authority necessarily satisfies the Fifth Amendment. Nor does it hold that statutory eligibility for detention permits DHS to disregard the procedures Congress prescribed for making an arrest or eliminates constitutional scrutiny of the process through which an individual's physical liberty is taken.

121. Indeed, § 1226(a) itself reflects that detention authority operates within legal constraints. Congress provided that "[o]n a warrant issued by the Attorney General," a noncitizen may be arrested and detained pending removal proceedings. 8 U.S.C. § 1226(a). Congress separately authorized warrantless arrests only under defined circumstances, including where an immigration officer has reason to believe that the person "is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2).

122. Those statutory limitations complement the fundamental purpose of habeas corpus. Where the Executive takes physical custody without the warrant contemplated by Congress, the detained individual may invoke the writ to require the Government to identify the lawful authority upon which that confinement rests.

123. Here, Respondents arrested Petitioner without a warrant. Yet the circumstances surrounding Petitioner's arrest appear to demonstrate the opposite of the urgency contemplated by § 1357(a)(2).

124. Petitioner was not apprehended while fleeing from immigration officers, concealing whereabouts, or attempting to evade governmental authority.

125. The writ therefore serves its historic function in this case by requiring Respondents to justify how a warrantless seizure under those circumstances comported with the authority Congress actually conferred.

A. *Petitioner's Longstanding Physical Freedom Is a Substantial Liberty Interest Protected by the Fifth Amendment*

126. Independently of the statutory defect in Petitioners arrest, Petitioner's years of physical freedom bear directly upon the constitutional process required before Respondents could subject Petitioner to civil incarceration.

127. Petitioner's claim should not be confused with the narrower line of cases involving individuals whom DHS previously arrested and then formally

released on bond, recognizance, parole, or supervision. In those cases, courts have relied upon *Morrissey v. Brewer,* 408 U.S. 471 (1972), *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Young v. Harper*, 520 U.S. 143 (1997), in recognizing that conditional liberty, once affirmatively granted, possesses constitutional significance.

128. Petitioner's circumstances are different. DHS did not previously arrest and formally release Petitioner under § 1226(a). Petitioner’s constitutional claim therefore does not depend upon characterizing Petitioner’s freedom as a government-created conditional liberty identical to parole or probation.

129. Rather, Petitioner's claim begins with the more fundamental liberty identified in *Zadvydas* and *Foucha*: freedom from governmental custody and physical restraint itself.

130. Petitioner's time of freedom materially increase the weight of that liberty interest. Petitioner lived openly in the community without absconding, and without custodial supervision.

131. During that same period, Petitioner developed substantial ties that supplied powerful incentives to remain available for immigration proceedings.

132. Against that background, the private interest affected by Respondents' decision could scarcely be more substantial: Petitioner's freedom from

physical incarceration and Petitioner’s ability to remain with family, in Petitioner’s home, at Petitioner’s employment, and within the community in which Petitioner had lived.

### B. *Due Process Protects Against Arbitrary Conversion of Longstanding Liberty Into Civil Incarceration*

133. The Fifth Amendment's protection of liberty would have little practical meaning if the Government could extinguish decades of physical freedom first and consider the necessity for incarceration only afterward.

134. Procedural due process exists to reduce the risk that Government action will erroneously deprive an individual of a protected interest. See *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). The constitutional inquiry therefore considers the private interest affected, the risk of erroneous deprivation under the procedures employed and probable value of additional safeguards, and the Government's interests and attendant burdens. Id.

135. Here, Respondents provided no individualized pre-deprivation procedure before transforming Petitioner's freedom into incarceration.

136. No neutral decisionmaker determined that Petitioner presented a danger to the community. No neutral decisionmaker determined that Petitioner was likely to abscond. No neutral decisionmaker determined that physical incarceration was necessary to secure Petitioner's future appearance. No neutral decisionmaker considered whether reporting, supervision,

electronic monitoring, or another less restrictive condition could adequately protect the Government's interests. And no neutral decisionmaker considered the extraordinary evidence contradicting any asserted need for immediate confinement: Petitioner's years of presence, family and employment ties, community involvement, and past employment history were taken into consideration.

137. Instead, Respondents imposed physical detention first. Only afterward could Petitioner potentially seek an administrative proceeding to persuade an Immigration Judge that Petitioner should be returned to the liberty Petitioner had continuously exercised before DHS's intervention.

138. That sequence lies at the center of Petitioner's due process claim.

C. *Removability and the Necessity for Physical Detention Are Distinct Questions*

139. The Government's authority to pursue removal proceedings does not establish that incarceration is necessary while those proceedings occur.

140. Removability and flight risk are distinct concepts. A person may lack lawful immigration status yet possess powerful incentives to appear for every required proceeding. Likewise, the existence of removal proceedings does not itself establish dangerousness or demonstrate that no noncustodial measure can reasonably secure future appearances.

141. Petitioner's circumstances illustrate that distinction. Petitioner’s lack of lawful status existed for years before DHS elected to incarcerate Petitioner. Yet throughout that period Petitioner maintained a fixed residence, established a family, and worked.

142. Treating characteristics such as entry without inspection, unlawful presence, or removability as independently sufficient to justify detention would collapse the individualized custody inquiry into the underlying immigration charge itself.

143. Such reasoning would potentially apply to virtually every similarly situated noncitizen and would therefore reveal little about why this particular Petitioner required physical incarceration.

144. Due process requires an individualized inquiry because civil detention must serve a legitimate regulatory purpose with respect to the person actually confined. Generalized assumptions cannot substitute for evidence demonstrating why physical detention of the particular individual is necessary.

145. Here, Petitioner's actual behavior supplies substantial evidence against any categorical inference of flight.

146. Respondents therefore cannot constitutionally equate Petitioner's removability with a demonstrated necessity for incarceration.

D. *The Availability of a Post-Deprivation Bond Hearing Does Not Eliminate the Constitutional Injury*

147. Nor does the possibility of a subsequent § 1226(a) bond hearing answer the liberty question presented here.

148. A post-deprivation bond proceeding may provide a mechanism through which Petitioner can seek restoration of Petitioner's freedom. But Petitioner's constitutional claim concerns whether Respondents were permitted to take that freedom without constitutionally adequate process in the first place.

149. The distinction between pre-deprivation and post-deprivation process is not semantic. Once Petitioner was incarcerated, the deprivation had occurred. Petitioner was separated from family, removed from Petitioner's home and employment, and physically confined.

150. Each day of detention thereafter represents liberty that cannot subsequently be restored. A later order of release cannot return the days or weeks spent in civil confinement.

151. Nor does the availability of a bond hearing resolve the allocation-of-burden problem inherent in the challenged procedure. If Petitioner is arrested first and then required to establish that Petitioner does not present a danger or flight risk, the Government has effectively shifted to Petitioner the burden of demonstrating why the liberty it already took should be returned.

152. Petitioner's constitutional claim asks a different question: what justified Respondents in taking Petitioner's liberty before any neutral decisionmaker found detention necessary?

153. *Rodriguez Vazquez* does not answer that question. It determines that § 1226 supplies the governing statutory detention framework; it does not hold that a post-deprivation bond hearing necessarily supplies all process constitutionally due where DHS has abruptly converted longstanding physical freedom into civil incarceration.

154. Nor can a bond hearing cure Petitioner's separate claim that the arrest producing the detention was statutorily unauthorized. As District Courts recently recognized in addressing a warrantless immigration arrest, a subsequent proceeding concerning danger and flight risk does not remedy the antecedent injury arising from arrest and detention without the statutorily required warrant.

E. *Habeas Review Is Necessary Because the Injury Is the Detention Itself*

155. Petitioner's physical confinement is not merely a collateral consequence of the challenged Government action. It is the constitutional injury for which Petitioner invokes the Great Writ.

156. Every day Respondents maintain custody extends the deprivation. Time spent incarcerated cannot be restored through a later bond determination, favorable immigration decision, or eventual judicial ruling.

157. Habeas corpus is therefore uniquely suited to this controversy. The writ permits an Article III court to examine whether the Executive possesses lawful authority to maintain physical custody and, where that authority is absent or constitutionally defective, to restore liberty.

158. Petitioner's request for immediate release accordingly does not ask this Court to substitute its judgment for USCIS or the Immigration Court on matters entrusted to those agencies. It asks the Court to exercise the judicial function historically associated with habeas corpus: to determine whether the Executive may lawfully continue holding a person in physical confinement.

159. Petitioner's years of freedom do not prevent the Government from administering the immigration laws. Petitioner’s pending removal proceedings may continue. Respondents remain free to exercise whatever lawful authority Congress has conferred, subject to the Constitution.

160. What Respondents may not do, however, is treat statutory removability as self-executing authority for arbitrary incarceration, disregard the statutory limitations Congress imposed upon warrantless arrest, or

extinguish a fundamental interest in physical liberty without constitutionally adequate process.

161. The writ exists to test precisely such restraints.

162. Accordingly, this Court should exercise its habeas jurisdiction to determine whether Respondents possessed lawful authority to arrest Petitioner without a warrant, whether the procedures employed before depriving Petitioner of physical liberty satisfied the Fifth Amendment, and whether Petitioner present confinement may constitutionally continue.

## PETITIONER'S WARRANTLESS ARREST RENDERS PETITIONER'S RESULTING DETENTION UNLAWFUL AND CANNOT BE CURED BY A POST-DEPRIVATION BOND HEARING

163. Petitioner's detention suffers from a threshold statutory defect separate and apart from whether Petitioner may ultimately be considered eligible for discretionary detention under 8 U.S.C. § 1226(a): Respondents arrested Petitioner without the warrant contemplated by § 1226(a), under circumstances that do not satisfy the limited statutory authority for a warrantless interior arrest.

164. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Congress separately prescribed the circumstances under which

immigration officers may dispense with that requirement. As relevant here, § 1357(a)(2) authorizes a warrantless interior arrest only where an immigration officer has reason to believe both that the individual is present in violation of immigration law and that the individual "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).

165. The second requirement must be given independent meaning. If a belief that a noncitizen lacks lawful immigration status were itself sufficient to authorize a warrantless arrest, Congress would have had no reason to separately require a reasonable basis to believe that the person would escape before a warrant could be obtained. Section 1357(a)(2) instead limits warrantless interior arrests to circumstances in which proceeding without a warrant is justified by the particular circumstances confronting the arresting officer.

166. Petitioner's arrest presents the opposite circumstances.

167. Petitioner was not attempting to evade DHS, concealing his location, departing from a known residence, or otherwise engaging in conduct suggesting that immediate apprehension was necessary before a warrant could be obtained.

168. The relevant statutory question is therefore not whether DHS could eventually seek Petitioner's detention. It is why DHS was authorized to

dispense with the warrant requirement at the moment it chose to arrest Petitioner.

169. Respondents cannot answer that question merely by relying upon Petitioner's entry without inspection, lack of lawful immigration status, or removability. Those circumstances may bear upon immigration enforcement generally, but they do not independently establish that Petitioner was likely to escape before a warrant could be obtained. Section 1357(a)(2) requires both predicates.

170. A contrary interpretation would effectively eliminate the second statutory requirement. If unlawful presence itself supplied reason to believe that a person would escape before issuance of a warrant, virtually every individual suspected of being unlawfully present could be arrested without one. The exception would swallow the warrant procedure Congress expressly incorporated into § 1226(a).

A. *Respondents Must Establish the Statutory Authority Upon Which the Warrantless Arrest Was Based*

171. Petitioner alleges that DHS did not possess an administrative arrest warrant when it took Petitioner into custody. No warrant was presented to Petitioner or counsel at the time of arrest, and none has subsequently been produced.

172. The evidence necessary to resolve that issue rests overwhelmingly within Respondents' possession. Whether an administrative warrant was requested, authorized, or issued is reflected in DHS's own records. If Respondents contend that a warrant existed, they can produce it.

173. If no warrant existed, Respondents should be required to identify the statutory basis upon which the arresting officers proceeded without one and the contemporaneous facts supporting the asserted exception.

174. That inquiry necessarily focuses upon what the officers knew when the arrest occurred. Section 1357(a)(2) requires that the arresting officer have "reason to believe" that the individual is likely to escape before a warrant can be obtained. The Government therefore cannot manufacture the required statutory justification retrospectively through circumstances, determinations, or proceedings occurring after Petitioner's arrest.

175. Nor should Petitioner bear the impossible burden of proving the absence of internal governmental authorization that, if it exists, is exclusively within Respondents' custody and control. Petitioner has alleged that no warrant existed. Respondents possess the governmental records capable of establishing otherwise.

B. *Failure to Comply With the Statutory Preconditions for Arrest Directly Implicates the Legality of Petitioner's Resulting Detention*

176. The warrant defect is not merely a collateral procedural irregularity unrelated to Petitioner's present confinement. Section 1226(a) connects arrest and detention in the same statutory authorization: "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained" pending the removal determination.

177. Thus, the question whether Respondents complied with the statutory mechanism authorizing Petitioner's arrest bears directly upon whether the physical custody resulting from that arrest was lawfully initiated.

178. Courts addressing materially similar claims have accordingly recognized that, absent an applicable statutory exception, failure to obtain the warrant contemplated by § 1226(a) may render the resulting detention unlawful. See *Sergio P. v. Bondi*, No. 26-CV-1538 (ECT/DTS), 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026); *Djiwaje v. Bondi*, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *4 (D. Nev. Apr. 6, 2026); *Romero-Perez v. Blanche*, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *3 (D. Nev. June 15, 2026). Those authorities recognize the basic principle that the Government cannot rely upon § 1226(a) as the source of detention authority while disregarding the statutory procedure through which that custody is authorized.

179. This distinction is particularly important following *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026). Petitioner accepts that § 1226, rather than § 1225(b)(2)(A), supplies the governing detention framework. But identifying § 1226(a) as the applicable source of authority necessarily requires consideration of the conditions Congress placed upon the exercise of that authority.

180. *Rodriguez Vazquez* therefore does not resolve Petitioner's warrantless-arrest claim. It identifies the governing statutory regime; it does not authorize DHS to dispense with § 1226(a)'s warrant mechanism irrespective of § 1357(a)(2), nor does it hold that a detention unlawfully initiated under those provisions becomes lawful merely because § 1226(a) otherwise permits discretionary detention.

C. *A Post-Hoc Bond Hearing Cannot Retroactively Supply the Statutory Authority Missing at the Time of Arrest*

181. The distinction between the legality of Petitioner's arrest and Petitioner's eligibility for release under § 1226(a) also demonstrates why an ordinary bond hearing is not an adequate remedy for this claim.

182. The two proceedings answer different questions.

183. A custody redetermination asks whether Petitioner should remain detained based upon considerations such as danger and flight risk.

184. Petitioner's present claim asks whether Respondents possessed lawful authority to take Petitioner into custody without a warrant in the first instance.

185. A subsequent Immigration Judge determination concerning Petitioner's present flight risk cannot establish that the arresting officers had reason to believe that Petitioner was likely to escape before a warrant could be obtained.

186. Nor can an Immigration Judge retroactively issue the missing arrest authorization. If DHS lacked a warrant and the statutory requirements for warrantless arrest were absent when Petitioner was seized, a later custody proceeding cannot change the historical facts upon which the legality of that seizure depends.

187. This is why the availability of a § 1226(a) bond proceeding does not resolve the antecedent statutory injury. The Government cannot arrest first without satisfying the statutory requirements for doing so and then insulate the legality of that arrest from judicial review by offering the detainee a later opportunity to seek release.

188. Such a rule would render the warrant requirement practically unenforceable. Every warrantless arrest could be followed by a bond

proceeding, thereby preventing any meaningful remedy for the Government's failure to comply with §§ 1226(a) and 1357(a)(2).

189. The statutory limitation Congress enacted would consequently cease to operate as a limitation at all.

D. *The Absence of Lawful Arrest Authority Also Bears Upon Petitioner's Procedural Due Process Claim*

190. The statutory defect assumes additional constitutional significance because Respondents used the warrantless arrest to accomplish an immediate and substantial deprivation of physical liberty.

191. Petitioner does not contend that every statutory arrest violation necessarily establishes an independent constitutional violation. Rather, the manner in which Petitioner's detention was initiated is relevant to the procedural adequacy of the Government's deprivation of liberty.

192. Respondents allegedly deprived Petitioner of physical freedom without the administrative warrant contemplated by § 1226(a) and without establishing the circumstances Congress identified as sufficient to permit immediate warrantless action under § 1357(a)(2).

193. At the same time, no pre-deprivation proceeding determined that immediate physical custody was necessary. Thus, at the moment the Government transformed Petitioner's freedom into incarceration, neither of the safeguards relevant here had occurred: there was no warrant authorizing

the arrest, and there had been no individualized pre-deprivation determination concerning the necessity of detention**.**

194. Those circumstances reinforce Petitioner's procedural due process claim because the Government's statutory departure increased rather than reduced the risk of an erroneous deprivation of liberty. The very circumstances Congress identified as justifying immediate action without a warrant, an individualized likelihood of escape before a warrant could be obtained, appear absent from this case.

195. Indeed, Petitioner's ordinary commute to work before arrest is significant in both respects. Statutorily, it substantially undermines any contention that Petitioner was likely to escape before a warrant could be obtained. Constitutionally, it constitutes powerful individualized evidence that immediate incarceration was not self-evidently necessary to secure Petitioner’s participation in immigration proceedings.

196. A later bond hearing cannot fully remedy either defect. It cannot retroactively authorize the warrantless arrest, and it cannot convert process supplied after the deprivation into process that occurred before Petitioner's liberty was taken.

197. Accordingly, the Court should evaluate the legality of Petitioner's present custody beginning with the authority through which that custody was

obtained. If Respondents cannot produce a warrant or establish that the statutory prerequisites of § 1357(a)(2) existed when Petitioner was arrested, Petitioner's resulting detention lacks the antecedent statutory authorization upon which Respondents rely.

198. Under those circumstances, the appropriate habeas remedy is restoration of the status quo preceding the unlawful seizure, Petitioner's release from physical custody rather than a post-hoc proceeding requiring Petitioner to seek discretionary restoration of liberty that was unlawfully taken in the first instance.

## COUNT I

## RESPONDENTS' WARRANTLESS ARREST AND RESULTING DETENTION OF PETITIONER VIOLATE 8 U.S.C. §§ 1226(a) AND 1357(a)(2)

199. Petitioner realleges and incorporates by reference all prior paragraphs as though fully set forth herein. Petitioner is presently detained pursuant to the civil immigration detention authority of 8 U.S.C. § 1226. Under *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026), noncitizens present without admission who are apprehended in the interior of the United States are governed by § 1226 rather than § 1225(b)(2)(A).

200. In Vasquez Perdomo v. Mullin, No. 2:25-cv-05605-MEMF-SP, Dkt. 738, at 32–35, 53–54 (C.D. Cal. Sept. 2, 2026), the court explained that § 1357(a)(2) requires individualized probable cause, before a warrantless civil immigration arrest, both of an immigration-law violation and, independently, that the person is likely to escape before a warrant can be obtained. Mere unlawful presence cannot itself establish the separate escape predicate. See also Tejeda-Mata v. INS, 626 F.2d 721, 725 (9th Cir. 1980); Mountain High Knitting, Inc. v. Reno, 51 F.3d 216, 218 (9th Cir. 1995).

201. Petitioner accepts that statutory framework. The question presented in this Count is different: whether Respondents complied with the statutory requirements governing the arrest through which they acquired physical custody over Petitioner.

202. Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

203. Congress separately authorized immigration officers to make warrantless arrests in specifically defined circumstances. Under 8 U.S.C. § 1357(a)(2), an immigration officer may arrest a noncitizen without a warrant where the officer has reason to believe that the person is present in violation

of federal immigration law and "is likely to escape before a warrant can be obtained for his arrest."

204. These are separate statutory requirements. A belief that a person is unlawfully present does not itself establish authority to proceed without a warrant. Congress additionally required circumstances supporting a reasonable belief that the particular individual was likely to escape before a warrant could be obtained.

205. Respondents arrested Petitioner without an administrative arrest warrant.

206. The circumstances surrounding Petitioner's arrest did not present the urgency contemplated by § 1357(a)(2). On the morning of October 30, 2026, Petitioner was already inside his work truck outside his apartment complex when ICE officers pulled up and arrested him without a warrant. The facts supplied do not indicate that he was attempting to flee immigration officers or conceal his whereabouts.

207. Nothing supplied an apparent reason to believe that Petitioner would escape during whatever period was reasonably necessary to obtain an administrative warrant.

208. Respondents cannot substitute Petitioner's alleged removability or unlawful presence for the separate statutory requirement imposed by §

1357(a)(2). Those circumstances may bear upon whether immigration enforcement could lawfully be pursued, but they do not establish why immediate warrantless arrest was necessary.

209. Any contrary interpretation would render the "likely to escape" language effectively superfluous. If suspected unlawful presence alone permitted warrantless arrest, virtually every person believed to be removable could be arrested without a warrant, notwithstanding Congress's express decision to impose an additional escape requirement.

210. Respondents therefore must establish the authority upon which their officers relied when they dispensed with the warrant procedure contemplated by § 1226(a).

211. The relevant evidence is principally within Respondents' possession and control. If an administrative warrant existed when Petitioner was arrested, Respondents can produce it. If no warrant existed, Respondents can identify the contemporaneous facts upon which the arresting officers purportedly relied to conclude that Petitioner was likely to escape before one could be obtained.

212. That inquiry necessarily concerns the circumstances existing at the time of arrest. A subsequent removal charge, custody determination, or assessment of Petitioner's present flight risk cannot retroactively establish

that DHS possessed the statutorily required reason to believe that Petitioner would escape before a warrant could be obtained.

213. Courts considering materially similar warrantless immigration arrests have recognized that the warrant contemplated by § 1226(a) is not merely an irrelevant procedural formality. Where no warrant exists and the Government cannot establish an applicable statutory exception, the resulting arrest and detention may be unlawful. See *Sergio P. v. Bondi*, No. 26-CV-1538 (ECT/DTS), 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026); *Djiwaje v. Bondi*, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *4 (D. Nev. Apr. 6, 2026); *Romero-Perez v. Blanche*, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *3 (D. Nev. June 15, 2026).

214. The distinction between statutory detention authority and compliance with the statutory requirements for obtaining custody is dispositive here. *Rodriguez Vazquez* establishes that § 1226 governs Petitioner's detention. It does not establish that every arrest resulting in § 1226 detention is lawful regardless of how custody was obtained.

215. Respondents cannot invoke § 1226(a) as the source of authority for Petitioner's detention while simultaneously disregarding the statutory framework governing the arrest through which that detention commenced.

### A. *A Subsequent § 1226(a) Bond Hearing Cannot Cure the Antecedent Statutory Violation*

216. The availability of a custody redetermination under § 1226(a) does not cure the violation alleged in this Count.

217. An Immigration Judge conducting a bond hearing ordinarily determines whether continued detention is warranted based upon considerations including danger and flight risk. That proceeding does not determine whether DHS possessed lawful authority to arrest Petitioner without a warrant.

218. The distinction is temporal as well as substantive. A bond hearing asks whether Petitioner should remain detained after DHS has taken custody. Sections 1226(a) and 1357(a)(2), as relevant here, concern the authority by which DHS acquired that custody in the first instance.

219. An Immigration Judge cannot retroactively issue an administrative arrest warrant. Nor can a subsequent finding of flight risk create facts demonstrating that the arresting officers, at the time of seizure, reasonably believed Petitioner would escape before a warrant could be obtained.

220. A post-hoc bond proceeding therefore cannot supply statutory authority that was absent when the arrest occurred.

221. Treating a bond hearing as a complete cure would effectively render the statutory limitations upon warrantless arrest unenforceable. DHS could

arrest first without satisfying § 1357(a)(2) and thereafter answer any challenge to the arrest simply by affording the detainee an opportunity to request discretionary release.

222. That construction would invert the statutory scheme. Congress identified the circumstances under which immigration officers may dispense with a warrant before making the arrest. Those requirements cannot be reduced to procedural formalities that become irrelevant once DHS succeeds in obtaining physical custody.

B. *The Resulting Detention Is Properly Reviewable Through Habeas Corpus*

223. Petitioner's challenge is directed to the legality of Petitioner's present physical custody and therefore falls within the traditional function of habeas corpus.

224. Petitioner does not ask this Court to suppress evidence obtained through an allegedly unlawful arrest, dismiss removal proceedings, or adjudicate Petitioner's removability. The issue is whether Respondents may continue to hold Petitioner in physical custody where the detention resulted directly from an arrest allegedly undertaken without the statutory authority Congress required.

225. The distinction is important. Petitioner's removal proceedings may continue regardless of whether Petitioner is detained. The Government's

authority to pursue those proceedings does not depend upon its authority to maintain physical custody over Petitioner.

226. Thus, release from detention does not confer lawful immigration status, terminate removal proceedings, adjudicate the pending immigration relief, or prevent DHS from exercising lawful enforcement authority in the future.

227. It simply remedies the unlawful physical restraint challenged through the writ. Where the Government has failed to comply with the statutory requirements authorizing the seizure from which detention directly results, directing the detainee to seek discretionary release through a subsequent bond proceeding does not remedy the antecedent statutory violation.

228. Rather, habeas permits the Court to restore the status existing immediately before the allegedly unlawful seizure: Petitioner's physical liberty.

229. Releasing Petitioner therefore would not interfere with the Government's ability to continue immigration proceedings. It would require only that any deprivation of Petitioner’s physical liberty rest upon authority Congress actually conferred and procedures consistent with federal law.

230. Respondents arrested Petitioner without the warrant contemplated by § 1226(a), and because the circumstances do not establish the “likely to

escape" predicate necessary to invoke § 1357(a)(2), Petitioner's arrest and resulting detention are unlawful.

231. Petitioner is therefore entitled to a writ of habeas corpus directing Respondents to immediately release Petitioner from physical custody.

**COUNT II**

**RESPONDENTS VIOLATED THE FIFTH AMENDMENT BY DEPRIVING PETITIONER OF ESTABLISHED PHYSICAL LIBERTY WITHOUT CONSTITUTIONALLY ADEQUATE PRE-DEPRIVATION PROCESS**

232. Petitioner realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

233. This Count presents a constitutional question independent of Count I. Even assuming arguendo that Respondents possessed statutory authority to arrest Petitioner and detain Petitioner pursuant to 8 U.S.C. § 1226(a), the Fifth Amendment independently constrained the procedures through which Respondents could deprive Petitioner of physical liberty.

234. The Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. That protection extends to noncitizens physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

235. And the interest implicated here is among the most substantial recognized by the Constitution: "[f]reedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by due process. *Id.* at 690.

236. Petitioner does not contend that his prior freedom immunized him from immigration enforcement, nor does Petitioner challenge Congress's general authority to authorize discretionary immigration detention. Petitioner’s claim is narrower: where the Government seeks to convert an individual's existing physical liberty into civil incarceration, and circumstances permit an individualized determination before that deprivation occurs, due process requires constitutionally adequate procedures commensurate with the liberty at stake.

237. Here, Respondents deprived Petitioner of physical liberty without any prior hearing before a neutral decisionmaker concerning whether incarceration was necessary. There was no pre-deprivation determination of danger, flight risk, or whether reasonable conditions short of detention could adequately protect the Government's interests.

238. Respondents instead imposed detention first, leaving Petitioner to seek restoration of Petitioner’s liberty only after the deprivation had occurred.

A. *The Mathews Factors Favor Pre-Deprivation Process*

239. The constitutional adequacy of the procedures afforded Petitioner is evaluated under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers: (1) the private interest affected; (2) the risk of erroneous deprivation under the procedures employed and the probable value of additional safeguards; and (3) the Government's interest, including the burdens associated with additional procedures.

240. Each factor favors meaningful process before the deprivation of liberty under the circumstances presented here.

241. First, the private interest is physical liberty itself. Civil incarceration constitutes an extraordinary governmental restraint, and time spent unnecessarily detained cannot subsequently be restored. See *Zadvydas*, 533 U.S. at 690. The magnitude of that interest weighs heavily in favor of procedures designed to prevent an erroneous deprivation before confinement begins.

242. Second, the risk of erroneous deprivation was substantial because no neutral individualized determination preceded Petitioner's detention. The decision to incarcerate occurred without an adversarial opportunity to test whether confinement was necessary, whether the Government possessed

individualized evidence of danger or flight risk, or whether less restrictive conditions would adequately serve the Government's objectives.

243. The probable value of additional process was correspondingly substantial. A pre-deprivation determination would have required consideration of the individualized evidence already described above and permitted a neutral decisionmaker to distinguish between the Government's authority to pursue immigration enforcement and the separate necessity for physical incarceration while those proceedings remained pending.

244. That distinction is constitutionally significant. The existence of statutory authority to detain does not itself establish that detention of a particular individual is necessary. Without individualized review, discretionary civil detention risks becoming a categorical consequence of immigration status rather than a regulatory measure justified by the circumstances of the person confined.

245. Third, the Government's legitimate interests do not outweigh the need for pre-deprivation process where such process is practicable. Petitioner recognizes the Government's interests in enforcing immigration law, securing appearances at future proceedings, and protecting the public. But requiring an individualized determination of necessity does not prevent the Government from pursuing any of those objectives.

246. Nor does this case present circumstances in which immediate action made pre-deprivation process impracticable. As alleged above, Petitioner was sitting inside his work truck outside his apartment complex in the morning, and no facts supplied establish an imminent escape. The Government therefore had the practical ability to employ meaningful procedures before imposing physical confinement.

247. The administrative burden associated with such a determination is comparatively modest when weighed against the extraordinary private interest in freedom from physical restraint.

248. Accordingly, application of the Mathews factors demonstrates that meaningful pre-deprivation process was constitutionally required under the particular circumstances presented here.

B. *The Timing of the Required Process Is Constitutionally Significant*

249. Respondents cannot fully answer this claim by pointing to Petitioner's ability to request a custody redetermination after incarceration.

250. Procedural due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. Whether post-deprivation review is sufficient therefore depends upon the nature of the interest, the circumstances requiring governmental action, and the practicability of providing process beforehand.

251. Petitioner's claim focuses on that timing. The Government did not confront circumstances in which it was impossible or impracticable to provide process before acting. Yet Respondents deprived Petitioner of physical liberty first and deferred any neutral individualized determination concerning the necessity of detention until afterward.

252. A later bond hearing may provide a mechanism for prospective release, but it does not necessarily answer whether the initial deprivation occurred through constitutionally adequate procedures.

253. This distinction also prevents the Government from collapsing two separate inquiries: whether Congress authorized discretionary detention and whether the Constitution permitted that discretion to be exercised in this manner.

254. *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026), resolves the former by identifying § 1226 as the applicable detention framework. It does not resolve the latter. The existence of statutory detention authority does not eliminate the independent procedural protections of the Fifth Amendment.

C. *Due Process Requires the Government to Justify the Necessity for Civil Confinement*

255. The procedural deficiency is compounded if the available post-deprivation process requires Petitioner to establish why Petitioner should be released rather than requiring the Government to justify why civil incarceration is necessary.

256. Where physical liberty is at stake, allocation of the burden of proof materially affects the risk of erroneous deprivation. See *Addington v. Texas*, 441 U.S. 418, 423–27 (1979). The standard of proof reflects society's judgment concerning how the risk of error should be distributed when particularly important individual interests are threatened.

257. Civil detention imposes one of the most severe restraints the Government can place upon an individual. Where detention is regulatory rather than punitive, continued confinement should therefore rest upon individualized evidence establishing a legitimate necessity for that restraint rather than upon a presumption in favor of incarceration.

258. The Ninth Circuit has recognized in the immigration-detention context that due process may require the Government to bear the burden of justifying continued detention by clear and convincing evidence where substantial liberty interests are implicated. See *Singh v. Holder,* 638 F.3d 1196, 1203–05 (9th Cir. 2011).

259. The same principle bears directly upon the adequacy of any process afforded here. Requiring Petitioner to prove that Petitioner deserves restoration of liberty after the Government has incarcerated Petitioner places the risk of error upon the person whose fundamental liberty is at stake.

260. Due process instead requires procedures appropriately calibrated to the severity of the deprivation, including meaningful consideration of whether confinement is actually necessary and whether less restrictive alternatives can adequately serve the Government's legitimate interests.

### D. *Immediate Release Is the Appropriate Remedy; Alternatively, Any Custody Hearing Must Contain Constitutionally Adequate Safeguards*

261. Respondents imposed civil incarceration without constitutionally adequate pre-deprivation process, Petitioner respectfully submits that immediate release is the appropriate habeas remedy.

262. A contrary remedy would afford Respondents, after the deprivation has already occurred, the very opportunity to justify detention that due process required before Petitioner's liberty was taken.

263. Immediate release would not interfere with the adjudication of Petitioner's immigration case or prevent DHS from exercising lawful authority in the future. It would remedy the unconstitutional physical restraint while leaving the underlying immigration proceedings undisturbed.

264. If the Court nevertheless determines that a custody hearing is the appropriate remedy, Petitioner respectfully requests that the Court impose safeguards sufficient to minimize the risk that the constitutional deprivation will continue.

265. Specifically, Respondents should bear the burden of demonstrating by clear and convincing evidence that Petitioner's detention is necessary because Petitioner presents a danger to the community or a substantial risk of flight.

266. The Immigration Judge should be required to consider whether any condition or combination of conditions short of incarceration can reasonably mitigate any demonstrated risk and to make individualized findings explaining why detention is necessary.

267. Any continued-detention determination should rest upon evidence particular to Petitioner rather than generalized considerations inherent in removability or lack of lawful immigration status, and should contain findings sufficient to permit meaningful judicial review.

268. These safeguards are particularly important because a hearing that merely asks Petitioner to prove why the liberty already taken from Petitioner should be returned would not adequately remedy the procedural defect alleged in this Count.

269. Accordingly, even assuming Respondents possessed statutory authority to arrest Petitioner under § 1226(a), the deprivation and continued restraint of Petitioner's physical liberty without constitutionally adequate process violate the Due Process Clause of the Fifth Amendment.

270. Petitioner is therefore entitled to a writ directing Petitioner's immediate release from physical custody or, only in the alternative, a prompt custody hearing at which Respondents bear the burden of justifying continued detention by clear and convincing evidence and the decisionmaker meaningfully considers reasonable alternatives to confinement.

## COUNT III

## PETITIONER'S CONTINUED DETENTION WITHOUT AN INDIVIDUALIZED SHOWING OF NECESSITY VIOLATES THE FIFTH AMENDMENT

271. Petitioner realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

272. Even assuming arguendo that Respondents lawfully arrested Petitioner and were not constitutionally required to provide a hearing before initially taking Petitioner into custody, the Fifth Amendment independently limits the Government's authority to continue Petitioner civil detention without an individualized justification for confinement.

273. Immigration detention is civil and regulatory rather than punitive. Accordingly, continued confinement must bear a reasonable relationship to a legitimate governmental purpose, such as preventing danger to the community or securing appearance at immigration proceedings. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Foucha v. Louisiana*, 504 U.S. 71, 79–83 (1992).

274. The existence of those governmental interests in the abstract does not establish that incarceration of a particular individual is necessary. Due process requires an individualized determination that continued physical confinement is justified by the circumstances of the person detained.

275. That distinction is particularly important under 8 U.S.C. § 1226(a), which establishes a discretionary—not mandatory—detention regime. The Government's authority to pursue removal proceedings therefore does not establish an independent necessity for physical incarceration while those proceedings remain pending.

276. Nor may continued detention rest principally upon considerations inherent in removability itself. Entry without inspection, unlawful presence, or the existence of removal proceedings may describe Petitioner's immigration circumstances, but they do not independently establish that Petitioner presents a danger or an unmanageable risk of flight.

277. Otherwise, the individualized custody inquiry becomes circular: removability establishes flight risk, and flight risk then justifies detention because removal proceedings exist. Such reasoning would effectively transform discretionary detention under § 1226(a) into categorical detention for broad classes of removable noncitizens.

278. Due process instead requires consideration of whether this particular Petitioner presents a sufficiently substantial risk to justify incarceration and whether any identified risk can reasonably be addressed through conditions short of physical confinement.

279. Any determination that detention remains necessary must therefore rest upon individualized evidence rather than generalized assumptions and must meaningfully consider reasonable alternatives to incarceration. A conclusion that no condition or combination of conditions can mitigate an asserted risk must be supported by findings explaining why less restrictive measures are inadequate in the particular case.

280. The allocation of the burden of proof is likewise significant where continued physical confinement is at stake. See *Addington v. Texas*, 441 U.S. 418, 423–27 (1979). Due process should not place the risk of evidentiary uncertainty upon the individual whose liberty the Government seeks to restrain.

281. The Ninth Circuit has recognized in the immigration-detention context that substantial liberty interests may require the Government to justify continued confinement by clear and convincing evidence. See *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

282. Accordingly, if Respondents seek to continue Petitioner's detention, they should bear the burden of demonstrating by clear and convincing evidence that Petitioner presents a danger to the community or a substantial risk of flight that cannot adequately be mitigated through reasonable conditions of release.

283. This Count is independent of Petitioner's preceding claims. The Court need not conclude that Petitioner's warrantless arrest violated federal law or that pre-deprivation process was constitutionally required to determine that continued civil confinement must rest upon a constitutionally sufficient individualized justification.

284. Petitioner respectfully submits that immediate release is warranted because Respondents have continued to restrain Petitioner’s physical liberty without such a determination.

285. Alternatively, if the Court affords Respondents an opportunity to justify continued detention, Petitioner requests a prompt custody hearing at which Respondents bear the burden of proof by clear and convincing

evidence, reasonable alternatives to detention are meaningfully considered, and any decision continuing detention is supported by individualized findings sufficient for meaningful judicial review.

286. Petitioner's continued civil confinement cannot constitutionally rest upon generalized immigration considerations or an untested presumption in favor of detention, Petitioner is entitled to habeas relief under the Due Process Clause of the Fifth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner MARCOS ALVARO FRANCISCO respectfully requests that this Court:

1. Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241 and the Constitution of the United States;
2. Issue a Writ of Habeas Corpus and declare that Petitioner's present detention is unlawful because Respondents arrested and detained Petitioner without the warrant contemplated by 8 U.S.C. § 1226(a) and without satisfying the statutory requirements for a warrantless arrest under 8 U.S.C. § 1357(a)(2);
3. Declare that Respondents violated Petitioner's rights under the Due Process Clause of the Fifth Amendment by depriving Petitioner’s of physical liberty without constitutionally adequate pre-deprivation process;

4. Declare that Respondents may not continue Petitioner's civil detention absent a constitutionally sufficient, individualized justification demonstrating that confinement is necessary to serve a legitimate governmental purpose;
5. Order Petitioner's immediate release from Respondents' physical custody, subject to such lawful and reasonable noncustodial conditions as may be appropriate;
6. Enjoin Respondents from redetaining Petitioner on the same basis challenged herein without lawful statutory authority and constitutionally adequate process;
7. Alternatively, and only if the Court declines to order Petitioner's immediate release, order Respondents to provide Petitioner with a prompt, constitutionally adequate custody hearing before a neutral decisionmaker at which:

a. Respondents bear the burden of establishing by clear and convincing evidence that Petitioner presents a danger to the community or a substantial risk of flight;

b. Respondents must establish that continued physical detention is necessary, rather than merely permissible;

c. the decisionmaker must meaningfully consider whether any condition or combination of conditions short of detention can adequately mitigate any demonstrated risk;

d. Petitioner's inability to pay any monetary bond imposed must be considered, together with the availability of alternative conditions of release; and

e. any decision continuing Petitioner's detention must be supported by specific and individualized findings sufficient to permit meaningful judicial review;

8. Retain jurisdiction as necessary to ensure Respondents' compliance with this Court's judgment and any conditions or procedural safeguards ordered by the Court;

9. Award Petitioner reasonable costs and attorneys' fees to the extent authorized by law; and

10. Grant such other and further relief as this Court deems just, proper, and equitable.

Dated: 10/31/2026

____________________________

Carlos Barrios

**VERIFICATION BY PETITIONER PURSUANT TO 28 U.S.C. § 2242**

I, Carlos Barrios, am submitting this verification on behalf of MARCOS ALVARO FRANCISCO, who is currently detained by the U.S. Department of Homeland Security at the DESERT VIEW FACILITY. Petitioner is being held under conditions that severely restrict or prevent meaningful communication with the outside world.

As a result, he is unable to review or sign this petition personally or to prepare and file it on his own behalf.

I have communicated with Petitioner to the extent possible and have obtained the factual information contained in this Petition from my direct knowledge, records, and reliable sources. I hereby verify that, to the best of my knowledge and belief, the factual statements contained in the attached Petition for Writ of Habeas Corpus are true and correct, and that I could testify to those facts if called upon to do so.

Date: 10/31/2026



Carlos Barrios